[PHILADELPHIA, FEBRUARY, 14, 1835.]

# BOYLE and Others *against* ABERCROMBIE.

### APPEAL.

*J. A.* by a postnuptial settlement made to secure moneys borrowed by him from the wife's separate estate, secured to her previous to marriage, conveyed land in trust for the sole and separate use of his wife, with full powers of limitation and appointment to her, with or without the concurrence of her husband.

*J. A.* and his wife mortgaged all the estate, right, title and claim of both of them in the premises to a *bona fide* lender of money. *Held,* that the settlement was not on its face fraudulent as against creditors of the husband; and there being no evidence of fraud to impeach it, it was held, that under a sheriff's sale of the premises, on a judgment against *J. A.*, subsequent in point of time to the mortgage, the mortgagee had a right to come upon the fund for payment, and was entitled to priority over the judgment.

This was an appeal from the decision of the District Court for the city and county of Philadelphia, awarding distribution of the

proceeds of the sheriff's sale, under a *venditioni exponas* issued in the above case.

It was a contest between the plaintiffs who claimed the proceeds of sale under a judgment on an award of arbitrators, filed July 21st, 1832, and *Josias Pennington,* who claimed under a mortgage of the property executed by *Abercrombie* and wife to him on the 7th of June, 1832.

The plaintiffs issued their writ on the 26th of May, 1832, and on the 5th of June, 1832, filed their declaration and entered a rule of reference.

The court below confirmed the report of the auditor, awarding in favour of the mortgagee.

By an indenture dated the 1st of June, 1832, *James Abercrombie,* Jr. reciting that he had theretofore borrowed and received from his wife, *Mary F. Abercrombie,* the sum of forty thousand dollars and upwards, out of her proper moneys and separate estate, which he had always intended to secure to her by the conveyance and settlement of any property he might possess to the same uses and trusts as the money so received and borrowed was subject to; and reciting a former conveyance, dated November 6th, 1816, of a lot of ground at the north-west corner of Broad and Callowhill streets, to one *Kennedy Owen,* in trust for the sole and separate use and benefit of the said *Mary F. Abercrombie,* and reciting sundry mesne conveyances whereby for the purpose of enabling him to effect certain arrangements with respect to an annual rent charge thereon, the same had become vested in the said *James Abercrombie,* Jr. who having fulfilled the object of the conveyance to him, was desirous of conveying the property in trust for his wife, in the same manner as it was held by the said *Owen*; it was witnessed that the said *James Abercrombie,* Jr. in consideration of the premises and of the sum of five dollars to him paid by *James Campbell* out of the proper moneys of the said *Mary F. Abercrombie,* did convey to the said *James* the said lot of ground, upon trust, nevertheless, to make leases of the same from time to time during all the term of the natural life of the said *Mary F. Abercrombie,* and to receive the rents, issues and profits thereof, and pay and apply the same or the nett amount thereof to the said *Mary F. Abercrombie* for her sole and separate use and benefit, as if she were a *feme sole,* so that the same should not be subject to the control or liable for the debts of her said husband, or of any other husband she might thereafter marry, for which said rents, issues and profits, the receipts of the said *Mary F. Abercrombie,* whether she were covert or sole, should be full and sufficient discharges and releases; and from and immediately after the death of the said *Mary F. Abercrombie,* then upon trust to the proper use and behoof of all and every the child or children of the said *Mary F. Abercrombie,* and their heirs and assigns forever. But if the said *Mary F. Abercrombie* should die without leaving a child or children, or the.

descendant of a child or children, living at the time of her death, then upon trust for such person or persons, and for such uses, trusts and purposes as she, notwithstanding any coverture, might by her last will and testament by any instrument of writing in the nature of a last will and testament, limit and appoint, and in default of such limitation and appointment, then upon trust for the right heirs of the said *Mary F. Abercrombie* forever; provided always, and it was thereby expressly declared, agreed and understood by and between all the parties thereto, that it should and might be lawful for the said *Mary F. Abercrombie* at any time during her natural life and whether she were covert or sole, by any deed, or deeds, conveyance, or conveyances duly executed to revoke, annul and make void all and every or any the use and uses, estate and estates thereinbefore limited, expressed and declared of and concerning the same and to grant, bargain and sell the said lot of ground and premises, thereby granted, with the appurtenances, with or without the co-operation or concurrence of her present, or any future husband, unto any person or persons, and for such consideration or considerations as she might think proper, and to declare new and other uses of the same as to her should seem expedient, any thing therein contained to the contrary thereof, in anywise, notwithstanding.

*James Abercrombie,* Jr. and *Mary* his wife, mortgaged the premises to *Josias Pennington,* by an indenture bearing date the 7th of June, 1832, which contained the following recitals and provisions.

" Whereas the said *James Abercrombie,* Jr. and *Mary F. Abercrombie,* now stand indebted to the said *Josias Pennington,* in the sum of *five thousand three hundred and eighty dollars* for the like sum of current money heretofore lent them by the said *Josias Pennington,* on condition that they would secure the same to him by a mortgage on the lot or piece of ground hereinafter described,—and whereas the said lot or piece of ground hath been lately conveyed in trust for the use and separate benefit of the said *Mary F. Abercrombie,* by the said *James Abercrombie,* Jr. with full power and authority to the said *Mary F. Abercrombie* to convey and dispose of the said property as she might think proper. And whereas it is the intention of *the said Mary F. Abercrombie* to execute the power and authority so reserved to her: Now therefore, this indenture witnesseth, that *the said James Abercrombie,* Jr. and *Mary F. Abercrombie,* for and in consideration of the premises and of the sum of four dollars to them in hand paid by the said *Josias Pennington,* at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have bargained, sold, enfeoffed, and conveyed, and by these presents, do bargain, sell, enfeoff and convey unto the said *Josias Pennington,* his heirs and assigns, all that lot or piece of ground situate at the north-west corner of Broad street and Callowhill street, (describing the premises) together with all and singular the buildings and improvements thereon erected,

and the reversions and remainders, rents, issues and profits thereof and all the estate, right, title and claim of the *said James Abercrombie*, Jr. and *Mary F. Abercrombie* in and to the same, and to every part and parcel thereof, to have and to hold the said lot or piece of ground and premises with the appurtenances unto the said *Josias Pennington,* his heirs and assigns, to and for his and their only use and benefit, and for no other interest, use or purpose whatever. Provided always, and these presents are made on this express condition, that if the *said James Abercrombie*, Jr. or *Mary F. Abercrombie*, their or either of their heirs, executors, or administrators, do and shall well and truly pay unto the said *Josias Pennington*, his executors, administrators or assigns, the said sum of five thousand three hundred and eighty dollars on or before the eighth day of December next, (1832) with full legal interest thereon, then this instrument of writing and every matter and thing herein contained shall be utterly null and void.

And the said *James Abercrombie*, Jr. and *Mary F. Abercrombie* shall thereupon and thenceforward stand seized of and be entitled to the same full and beneficial title and estate in said lot or piece of ground that they, or either of them *had before the execution of these presents;* and the said *James Abercrombie*, Jr. and *Mary F. Abercrombie* do hereby jointly and severally covenant and agree with the said *Josias Pennington,* his heirs, executors, administrators, and assigns, that they and each of them shall and will at all times and at any time hereafter on the request of the said *Josias Pennington,* make all and *every such other, and further conveyance* and assurance of the above demised premises, as may be necessary to effectuate the object and intention of the parties hereto as before expressed."

*Stroud* for the plaintiffs.

The deed of trust of the 1st of June, 1832, divests *James Abercrombie*, Jr. of all title. *Pennington's* mortgage being entirely of *Mary F. Abercrombie's* interest, is unaffected by the sale of *James Abercrombie's* interest. He must look to the land and can't take the money. The husband's joining in the mortgage was merely nugatory. The purchaser can take only the right, title and interest of *James Abercrombie.* A party cannot claim in inconsistent rights. He cited *Irwin* v. *Tabb,* 17 *Serg. & Rawle,* 419. *Adlum* v. *Yard,* 1 *Rawle,* 171. *Allen* v. *Getz,* 2 *Penn. Rep.* 310. *Findlay* v. *Stump,* 2 *Rawle,* 168. *Ebright* v. *Bank,* 1 *Watts,* 397.

He contended further that the deed was fraudulent on its face, and however good as between the parties, if fraudulent it is void as to creditors. *Osborne* v. *Moss,* 7 *Johns.* 161. *Thompson* v. *Dougherty,* 12 *Serg. & Rawle,* 448. *Mackey* v. *Cairns,* 5 *Cow.* 547.

*Meredith,* with whom was *Chauncey,* contra, argued that the mortgagee had the prior lien. The opposite argument is founded on the presumption that the deed is fraudulent. It is not so on its face.

(Boyle and Others *v.* Abercrombie.)

It is not voluntary, but to pay a debt of the wife due her for money lent *J. A.* We do not claim under the deed of trust, but as a creditor to whom a pledge has been given. *Pennington* is a *bona fide* purchaser without notice of any fraud. A voluntary deed if recorded is good against subsequent creditors. They cited *Lancaster* v. *Dolan*, 1 *Rawle*, 231.

The opinion of the court was delivered by

SERGEANT, J.—The sheriff's sale under the judgment of *Owens'* administrators, against *James Abercrombie*, passes to the purchaser all the right, title and interest of *James Abercrombie*, in the lot sold; and the mortgage being of all his right, title and interest, the mortgagee has a right to come upon the fund for payment. If instead of a mortgage, the creditor had obtained a judgment, his right could not be questioned : and there is no difference between the two in the efficacy of the lien, though there is in their nature; the one being a specific lien, the other a general one. The mortgage, though prior to the judgment, is not the first lien; and it is therefore admitted the case does not fall within the provisions of the act of assembly of the 6th April 1830, and the land is, by the sheriff's sale discharged, so far as respects *James Abercrombie*, from all liens against him.

It is objected by the judgment creditor that the deed of the 1st June, 1832, divested *James Abercrombie* of all title, and that *Pennington's* mortgage is only of the interest of the wife transferred under her power, the joining of *James Abercrombie*, in the mortgage being nugatory—and therefore the mortgagee must look to the land under the title derived from her. It is true, the deed of trust of the 1st June, 1832, divests *James Abercrombie* of all title. But the mortgagee might choose not to rely solely on the title of the wife. The property was previously *James Abercrombie's*, and he might deem it a measure of prudence to include his title also in the security, and avail himself of a double assurance for his money; and I know of nothing that forbids a person lending money from including in his mortgage as well the donor as the donee of the tract mortgaged. This is done here expressly: the mortgage is in the name of both, transfers all the right, title, and interest of both, and is executed by both, and there is, on the face of it, some reason to suppose the junction of the husband was not nominal but substantial, because the mortgage recites a loan to both by the mortgagee on condition of their securing him by a mortgage of the premises. It cannot be pretended that the interest of the husband was worthless, since we see a sale of it has produced the moneys about which the parties are contending.

It is further objected by the plaintiff, that the deed of trust and mortgage were fraudulent; and, there are circumstances on the face of the transaction, such as the execution of the first of these convey-

ances immediately after a suit commenced, and of the mortgage whilst a reference was pending, which cast a strong shade of suspicion over it.    But suspicion is not proof; and in the absence of evidence we can judge of these instruments only by their face.    The deed of trust is a marriage settlement made after marriage, and the general rule is that such settlement is fraudulent and void against all persons who were creditors of the husband at the time of the settlement.    2 *Atk.* 520.    3 *Id.* 413.    2 *P. Wms.* 364.    But there are exceptions to this rule, one of which is, when it is made in pursuance of articles before marriage, *Beaumont* v. *Thorpe*, 1 *Ves.* 127: and the deed of trust recites, that this property was originally settled on the wife to repay moneys borrowed of her separate estate, secured to her previous to marriage, and was afterwards conveyed by her through *C. Riddle* to her husband, to enable the latter to effect certain arrangements with respect to a rent charge upon it: and it purports to be made to restore the property to her.    If so, and we have no evidence to the contrary, the deed of trust might be valid against creditors; and if it were even void as respected the parties, it might not be so as to the mortgagee if he lent his money *bona fide*. But it is not necessary to give any opinion on this point, because in this suit the mortgagee does not claim under the deed of trust: the claim is of the right of *James Abercrombie*, which is paramount to that deed, and as to that, the only question that could be raised would be whether a person in debt may not mortgage his property to a *bona fide* lender of money, a question which could admit of no doubt.

If the mortgage was collusive, and for the mere purpose of abetting *James Abercrombie* in defeating his creditors, the security would be void, and the conduct of the abettor criminal.    But no evidence was given on this head.    One of the plaintiffs in the judgment, purchased at the sheriff's sale, and holds the sheriff's deed.    If he can show fraud, and thus destroy the deed of trust and the title of the mortgagee, he will, so far as we can judge at present, hold the land discharged of the residue of the mortgage claim.    But there is no ground laid before us to decree the mortgage fraudulent, or to reverse the decree of the court below, by which the money is awarded to the mortgagee, as the prior lien creditor.

Decree affirmed.